Spear, J.
This pleading undertakes to set forth a claim ostensibly against the Board of County Commissioners, though in reality against the county of Portage, for compensation for private property alleged to have been taken for public use without compensation having been awarded. The constitutional provision invoked (section 19, article I), is to the effect that when private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money. It was the judgment of the circuit court that the petition makes a case by virtue of the clause of the constitution *24 above cited, and thereupon its judgment of reversal necessarily followed.
To justify this conclusion two propositions must be • established: (1) that, within the meaning of the above section, there has been a taking without provision for opportunity to obtain compensation, and (2) that such taking has been for a public use. Do the averments of the pleading establish these propositions ? There is much conflict among the decisions of courts with respect to what is necessary to constitute a taking, many courts holding that a physical seizure or appropriation is essential, while others adhere to the doctrine laid down in Mansfield v. Balliett, 65 Ohio St., 451, that any actual and material interference with private property rights is a taking of property within the meaning of the' constitution. Regarding the rule as thus settled in this state we do not consider it necessary to discuss the legal proposition. It is, however, of importance to keep in mind that in the present instance there was in fact no actual taking, no seizure or physical appropriation of any of the property or rights of the plaintiff. We inquire, therefore, whether such taking in the present case has been without opportunity afforded for ascertainment of damage and payment of compensation, and whether upon the whole the taking has been for a public use within the meaning of the clause of the constitution cited. This inquiry calls for an examination of certain provisions of the statute providing for the construction of ditches. By .section 4450, Revised Statutes, and following, provision .is made for *25 application signed by owners of lots or lands which will be benefited by the proposed improvement to the county commissioners for the establishment of such ditch. The petition is to be filed with the auditor accompanied by a bond. The auditor shall thereupon give notice to the commissioners of the filing of the petition, fix a day for hearing, and prepare and deliver to the petitioners or' any of them a notice in writing directed to the landowners affected by the improvement setting forth the substance, pendency and prayer of the petition. Copies of the notice are to be served on each landowner (that is, owner named in the petition), and return made to the auditor. The auditor shall at the same time give a like notice to each nonresident lot or land-owner by a publication in a newspaper printed and of general circulation in the county at least two weeks before the date of the hearing, and no further notice of the petition or the proceeding shall thereafter be required. On the day fixed for the hearing the commissioners shall meet at the place of the beginning of the ditch and hear all competent proof offered, go over the whole line of the ditch, determine the necessity thereof and in case they find for the improvement, fix a day for the hearing of application for any appropriations of land taken and damages to said parties affected by the improvement. The surveyor is then required to make a survey of land that will be benefited with an apportionment of the cost of location, and - labor of constructing, according to benefits which will result to each, and in apportioning the costs, etc., *26 etc. At any time on or before the day set for hearing any person whose lands are taken or affected in any way by such improvement may make application in writing for compensation or damages, and a failure to make such application shall be deemed and held to be a waiver of all rights thereto. The commissioners shall allow such compensation as they may deem just and equitable and assess such damages as may accrue to each person making application therefor. When the allowance for compensation and damages is determined the commissioners shall determine the proportionate benefits to accrue. They may, if they find that the public health, convenience or welfare will be promoted by the improvement, and that the same is of sufficient importance to the public, cause the damages and compensation which have been assessed to be paid out of the county treasury, and shall order the same to be so paid, or a portion thereof by the county and the remainder by the benefited land-owners, but if such improvement is not of sufficient importance to the public to cause such damage or compensation, or any part, to be paid by the county, they shall determine the proportionate amount thereof which shall be paid by the several land-owners. Order shall issue by the auditor accordingly. Provision is also made for appeal by any aggrieved person to the probate court where a jury shall try the issues.
In the absence of allegations to the contrary the presumption must be indulged that the Board, throughout these proceedings, acted strictly in conformity with the requirements of the statute, *27 and this presumption is strengthened by the direct averments of the petition. ' Therefore, it is presumed that written notice was served on all persons named in the petition as land-owners or others to be affected by the construction of the ditch, and as to all others, the world at large, the auditor did give a like notice by publication in a newspaper printed and of general circulation in the county for at least two weeks before the day set for the hearing. Thus was the Board clothed 'with jurisdiction and power to conduct legally the proceedings initiated by the filing of the petition and as contemplated by the statute. Being, so far as this petition was concerned, and within the meaning of the statute, a non-resident land-owner, the plaintiff received the notice which the statute provides although, as alleged in his petition, he was in no way made a party to the proceedings and was not served with any notice of any hearing.
The concrete question is, did the publication of notice so far affect the plaintiff as to debar him from his claim for damages, it being conceded that he made no claim whatever before the Board? We regard the question as settled adversely to the claim of plaintiff by previous decisions, and will briefly call attention to some of them.
In Cupp et al. v. Commissioners, 19 Ohio St., 173, the plaintiffs’ action was to enjoin the construction of a ditch about to be constructed over the land of plaintiffs and others. The' statute authorizing the proceeding (58 O. L., 49), was attacked as unconstitutional in that it-provides for the appropriation of land without actually paying *28 or securing compensation. No compensation had been paid or secured plaintiffs for their land taken, and that although notice of the prayer and pendency of the petition for the ditch and of the time fixed for its hearing, etc., was published agreeably to the requirements of the statute, plaintiffs had no actual notice of the same, nor consented. They made no claim for compensation or damages within the time limited by statute. The statute then in force. required publication and notice in a newspaper for four weeks, but did not require written notice to be served on land-owners. Otherwise in general and as regards the present contention,, the statute was similar to the provisions now in force. The court held that personal notice is not indispensable in order to its condemnation, the notice by publication provided being for that purpose sufficient; and that the land-owner failing to make application for compensation or damages will be held to have waived his right, although he had no actual notice of the proceeding. It was the opinion of the court that the proceeding was substantially in rem. Welch, J., in the opinion observes that the law of all such proceedings rests in the necessity of the case, and that without the aid of some such proceeding the construction of ditches would be next to impracticable. Some such provision of law seems indispensable, and without the power to proceed in some such form against the land itself, the right guaranteed to the public by the provision of the constitution would be of little avail. Owners of land are presumed to know of the existence of the act, and therefore to have *29 notice that their lands are liable at any time, upon four weeks’ publication of notice, to be taken for the use of a ditch and that, their non-claim will be held as a waiver. There is, continues thé learned judge, no greater hardship in this implied waiver, after notification beforehand that silence will be taken for consent, than there is in the analogous cases of creditors of a bankrupt or insolvent, or of claimants upon any fund in the hands of a court for distribution who fail to present their claims within the designated time. This case would seem to have been a much stronger one for the claimant than the one at bar inasmuch as the commissioners might with little effort have learned who the owners of the lands proposed to be actually taken were, while it could hardly be assumed that the Board in the present case would be possessed in its own consciousness of prescience to anticipate and make provision for a claim not presented to it and at most a case of mere consequential damages.
Chesbrough v. Commissioners, 37 Ohio St., 508, was an action brought in the common pleas of Putnam county to enjoin the commissioners of Putnam and Paulding counties from constructing a ditch, and from assessing the cost against the plaintiff’s land, the ditch being partly in Putnam and partly within Paulding county, and was located and established by a joint session of the two boards. It was claimed that no notice had been given such as the statute requires, and that plaintiff had no actual notice. The court held that the burden was on the plaintiff to show a want of *30 notice. Plaintiff offered in evidence a copy of the proceedings in Putnam county only. What was done in Paulding did not appear except as it was to be inferred from the recitals in the record made in Putnam county, and in the action of the joint boards. These showed notice of publication' in Putnam. For aught that appeared the records of Paulding showed a like notice in that county. Plaintiff was denied relief.
Another view would seem to be equally fatal to the claim of plaintiff in this case. We are dealing with a question of liability of a county, a claim to be made good, if at all, by taxation upon the property of the people at large. Now a county is not a body corporate but rather a subordinate political division, an instrumentality of government, clothed with such powers and such only as are given by statute, and liable to such extent and such only as the statutes prescribe. The board of commissioners acts in such matters as the construction of ditches in a political rather than a judicial capacity, and that body also in such action is clothed with such powers only as the statutes afford. The board represents in general in a proceeding of this character the land-owners whose, lands are to be benefited by the improvement. In its corporate capacity the county has no special interest in the improvement. It is local in character, not differing in that respect in principle from the establishment of sewers in municipalities. It is only when the proofs adduced show that the health, convenience or welfare of the public at large, the county, requires the construction' of the ditch, that the *31 board is authorized to represent the county in that regard, the provision of statute being that if it be found not only that the public health, convenience or welfare will be promoted by the improvement, but that the same is of sufficient importance to the public, then the board may cause the damages and' compensation which have been assessed to be paid out of the county treasury, or a part thereof to be so paid, but if, in the opinion of the board, the improvement is not of sufficient importance to the public, then the board must fix and determine the proportionate amount thereof which should be paid by the several land-owners benefited by the improvement. In the present case that was all that was done. No finding appears which relieves the ditch from being simply a private ditch as between the land-owners benefited and the public at large, and in such case the county has no proprietary interest in the ditch. As held in Commissioners v. Krauss, 53 Ohio St., 631, “it belongs to the land-owners on whose lands and for whose benefit it was constructed. The commissioners simply acted as a board before whom the necessary proceedings for the construction of the ditch had, by the statute, to' be conducted.”
With this understanding of the principles involved in the case, it seems clear that the “taking” in this instance, however unfortunate it may have proven to the plaintiff below, is not a violation of any constitutional right, for, as expressed by Burket, J., in Dayton v. Bauman, 66 Ohio St., at page 393: “There is no taking of private property by the public for public use, but, on the *32 contrary the public confers a special benefit upon the property and then enforces an assessment not exceeding the benefit so conferred.”
Nor are these views novel as introducing any new rule of law or of construction. Grimwood v. Commissioners, 23 Ohio St., 600, was an action to recover of defendants as commissioners of Summit county damages resulting from the wrongful and negligent construction of an embankment made by order of the defendants in the opening and grading of a highway whereby water was diverted from the natural channel and flowed back on lands of plaintiff. The court held that the action could not be maintained. That is, that the county could not be held liable for such acts of the commissioners although negligent and working damage. The decision is based upon Commissioners v. Mighels, 7 Ohio St., 110, in which case it is held that: “The board of commissioners of a county are not liable in their quasi corporate capacity, either by statute or common law, to an action for damages' for injury resulting to a private party by their negligence in the discharge of their official functions.” In the opinion, Brinkerhoff, J., admits that if the negligence and injury had been the act of a natural person or the agents of a municipality or other corporation proper, the corporation might have been held, but municipal corporations proper are created by the direct solicitation or the free consent of the people who compose them, while counties are local subdivisions of a state, created by the sovereign power of the state of its own sovereign will, without the par *33 ticular solicitation, consent or concurrent action of the people, and almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of. military organization, of the means of travel and transport, and especially for the general administration of justice. The logical deduction from the foregoing is that, in the absence of statutory provision entailing liability on a county for acts of its board of commissioners, no such liability exists. Since the foregoing decisions were pronounced statutes have been enacted giving in more or less direct terms a right of action under specified circumstances against the county for the acts or omissions of the board, but, as we have already found, the statutes invoked in this inquiry do not give such right of action under the circumstances of this case.
A construction of the ditch statutes similar to that hereinbefore announced was taken by the circuit court in Smith v. Griffin, 6 O. C. D., 232, the action being for breach of bond to complete ditch work. The opinion is by Price, J., now a member of this court. In it the learned judge observes: “A proper understanding of the several sections of the statute regulating the mode and manner of forcing the construction of ditches in Ohio shows that the expenses of the work, with all its attending costs, from the inception to the final close of the proceedings, shall be borne alone by those who are found and adjudged to be benefited, and the statute carefully guards the *34 rights of those whose lands are so situated that no benefit will accrue to them by reason of the ditch improvement. The entire system of ditch legislation as. we now have it proceeds on the theory that those who are to be benefited in some substantial way, and those alone shall bear the burden of providing the drainage. It is true that under the provisions of the statute, the enforcement of proper and sufficient drainage of lands in localities requiring it, is worked out through application to the board of commissioners, who, together with the engineer and other instrumentalities provided, have charge of the work; yet, in the performance of such official duties they are not acting as agents of the county at large; nor can they bind the county at large by any neglect or wrongful act while conducting and managing the execution of the ditch work. If any relationship of agency exists in such a case, they would seem to be more the agents of the parties interested in the drainage, who by petition have invoked the action of the commissioners, than of the taxpayers and people of the county. While the statute authorizes the board of commissioners to appoint an engineer, and provides that the engineer shall let the work and take contracts and bonds for its performance, subject to the approval of the commissioners; it is plain that in the discharge of these statutory duties, neither the engineer nor the commissioners are representing the county so as to make all its taxpayers liable for the manner in which they discharge or neglect to discharge their duties, or for breach of such contract as is contained in the *35 petition.” Relief was denied, and the judgment was affirmed by this court, 56 Ohio St., 775.
Much stress is laid by counsel for defendant in error in their able brief on the case of Smith v. Commissioners, 50 Ohio St., 628. That was an action for damages accruing to abutting land from a change in the established grade of a public road. The relief granted the land-owners was distinctly based upon the proposition that the statute having empowered county commissioners to improve any state, county or "township road, or any part thereof, by grading, etc., and the board having exercised the power and in their official capacity having improved the road for the public benefit, the county was liable for damages to abutting lands. The obvious difference between this case and the one at bar is ‘that while the former embraced a proceeding instituted and conducted for the public benefit, the latter was for private benefit exclusively.- Manifestly the decision can have no controlling effect upon the present inquiry. Other cases cited by the counsel have been considered. We do not deem it necessary to extend an opinion already too long by comment upon them more than to say that in our opinion they do not require any modification of the conclusions hereinbefore stated.
Recurring to the introductory statement, we repeat that we are asked to maintain a claim of a property-owner against a county. The ultimate question is, does the petition state a case against Portage county? We hold that it does not. Whether a remedy by injunction might have been awarded the plaintiff, had he applied in time to a *36 court of equity we need not inquire, for no such application was made although, for aught that appears in the petition, the plaintiff may have had actual knowledge of the pendency and purpose of the proceeding before the wúrk had been accomplished or entered upon, and thus opportunity to bring such action.
The judgment of the circuit court will be reversed and that of the common pleas affirmed.

Reversed.

Summers, C. J., Crew, Davis, Shauck and . Price, JJ., concur.